# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JEFF TUPPER, | ) |
|                Plaintiff, | ) |
| | ) |
| v. | ) |
| | )    20-CV-96 |
| ST. FRANCOIS COUNTY, | ) |
| SHERIFF DAN BULLOCK, | )    ACTION FOR DAMAGES |
| DENNIS W. SMITH, JOHN DOES 1-6, | ) |
| and HEATHER KATHERINE SMITH, | )    JURY TRIAL DEMANDED |
| | ) |
|                Defendants. | ) |

## COMPLAINT

1. This is a civil action under 42 U.S.C. §1983 and the Missouri Wrongful Death Statute R.S.Mo. §537.080 for the violation of decedent Tabitha Tupper's constitutional rights.

## JURISDICTION

2. This case arises out of the death of Tabitha Tupper in November 2017 while she was held as an inmate in the St. Francois County Jail in Farmington, Missouri.

3. This Court has jurisdiction under 28 U.S.C. § 1331 because this complaint alleges violations of 42 U.S.C. §1983. This Court has supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. §1367.

## VENUE

4. Venue is proper under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in the Eastern District of Missouri.

**Complaint**
*Tupper v. St. Francois County, et al.*
Page 2

## THE PARTIES

5. Plaintiff Jeff Tupper was the husband of Tabitha Tupper.

6. Defendant St. Francois County is a political subdivision of Missouri and is a person for purposes of a 42 U.S.C. §1983 action.

7. Defendant Dan Bullock, at all times relevant herein, was the elected St. Francois County Sheriff and responsible for maintaining the jail operations.

8. Defendant Dennis W. Smith, at all times relevant herein, was employed at the St. Francois County Jail as Jail Administrator and working under the direction and control of Defendants' County and Sheriff.

9. Defendants John Does 1-6, at all times relevant herein, were employed at the St. Francois County Jail as Deputies and working under the direction and control of Defendants' County, Sheriff, and Smith.

10. Defendant Heather Katherine Smith, at all times relevant herein, was employed or hired by the County and Sheriff Bullock as a licensed practical nurse, worked under the direction and control of Sheriff Bullock, and was involved in the death of Tabitha Tupper, as further explained herein.

11. At all relevant times set forth herein, defendants acted under color of state law, Federal law and the Constitutions of Missouri and the United States of America.

## INTENTIONAL WAIVER OF SOVEREIGN IMMUNITY

12. Upon information and belief, at all relevant times, Defendant St. Francois County had purchased and had in effect a policy of insurance to insure itself and the St. Francois County Sheriff's Department against claims or causes of actions for damages

**Complaint**
*Tupper v. St. Francois County, et al.*
Page 3

caused by its employees engaged in government functions, including the torts and civil rights violations described herein.

13. The purchase of insurance constitutes an intentional waiver of sovereign immunity by Defendant St. Francois County, Defendant Sheriff, and the employees of the County and the St. Francois Sheriff's Department for all of Plaintiff's claims.

14. Upon information and belief, the policy does not preclude or prevent waiving sovereign immunity as a condition of its issuance, or as a contractual obligation.

**FACTS**

15. After developing a serious, chronic illness, Tabitha Tupper became disabled and came under the care of a physician who prescribed opioids as part of her treatment regimen, which caused Tabitha to develop an addiction to controlled substances that ultimately included heroin.

16. Tabitha's medical treatment plan also required her to take anti-seizure medications multiple times per day.

17. The anti-seizure medication worked, and if Tabitha took the anti-seizure medication in a timely manner, further seizures would be prevented.

18. In November 2017, Tabitha was turned into law enforcement officers on an outstanding warrant by her husband, under the belief that Tabitha would be forced to undergo drug rehabilitation treatment while under confinement.

19. Tabitha was a quiet and shy woman who caused no trouble to the jailers or her cellmates and frequently accepted the invitation of other cellmates to play cards

**Complaint**
*Tupper v. St. Francois County, et al.*
Page 4

with them, but within a week of being confined at the jail, Tabitha began having seizures.

20.     Tabitha's cellmates repeatedly informed Does 1-6 that Tabitha needed medical attention and that she was slurring her words, speaking gibberish, and, near the end of her life, sitting in her own feces and urine and unable to communicate.

21.     Although Tabitha suffered from this altered state at least two or three times during her time with the women in the general population, her cellmates and other witnesses informed Does 1-6 with no success in getting Tabitha medical attention. Deputy 6 was heard by witnesses to say after observing Tabitha that Tabitha "had to be taking something" and "had to be on drugs" but this deputy did nothing to help Tabitha and did not call 911.

22.     Does 1-6 did not offer any assistance to Tabitha even though they observed Tabitha's condition for themselves. They did not assess her condition, did not bring in a qualified medical personnel to assist Tabitha, and did not call 911.

23.     When Tabitha experienced another seizure in the second week of her confinement during the "lockdown" portion of the evening, alarmed witnesses had no way of getting help for her except by yelling, kicking, and hitting the cell doors to make as much noise as possible to draw the attention of the deputies because the emergency call button is located outside the cells and cannot be accessed after 10 p.m.

24.     Instead of calling 911 or calling a medical professional to help Tabitha, the deputies dragged Tabitha out of her cell – leaving Tabitha's cellmate to clean up the

**Complaint**
*Tupper v. St. Francois County, et al.*
Page 5

urine and feces – and placed her in "the hole" which is where, upon information and belief, Tabitha finally died.

25. At the time of her death, Tabitha Tupper was approximately 36 years old and the mother of two young children.

26. Jeff Tupper received no word of Tabitha's seizures, and only learned of her death after a phone call from someone at the jail saying "Your wife is dead. Call Parkland Hospital."

27. Nurse Smith allegedly worked eight hours per day as a Licensed Practical Nurse at the St. Francois County Jail from Monday to Friday during normal business hours.

28. Nurse Smith did not conduct a medical examination of Tabitha during the two weeks Tabitha was confined at the jail.

29. Nurse Smith did not administer Tabitha's anti-seizure medications.

30. At the time of her death, Tabitha's status at the jail was one of a pretrial detainee, which placed a constitutional burden and a statutory burden on the jail to keep her healthy and safe while she was in their custody.

31. There is no written policy for the deputies to use to properly assess detainees in medical distress and get them emergency medical care.

32. There is no written policy instructing deputies how and when to call 911 to get help for inmates.

**Complaint**
*Tupper v. St. Francois County, et al.*
Page 6

33. The failure of the deputies to seek immediate medical evaluation and treatment for Tabitha Tupper was clearly an inadequate response to Tabitha Tupper's behavior and physical condition.

34. It has been clearly established since at least 2008 in the Eighth Circuit that an inmate has a right to be free from deliberate indifferent denials to emergency medical care. *Carpenter v. Gage*, 686 F. 3d 644 (8th Cir. 2012).

35. Does 1-6 were either personally aware from direct observation or advised each time Tabitha Tupper had a seizure that she needed medical intervention and treatment.

36. It is obvious to any reasonable person that if someone whose behavior has become substantially altered, who appears to be disconnected from reality, speaking in gibberish, slurring their words, and lying in their own waste, that such person would need immediate medical treatment to prevent the risk of serious injury or death.

37. Anyone witnessing Tabitha Tupper's condition at the jail would have recognized she needed medical attention, yet Does 1-6, Nurse Smith, Smith, Bullock, and County did nothing in response.

38. Tabitha missed taking at least 12 days of anti-seizure medication during her confinement at the county jail.

39. It is obvious to any reasonable person that if a person is on anti-seizure medication, that it is medically necessary to take it as prescribed, as someone can die from a seizure or have other serious medical complications from having a seizure.

**Complaint**
*Tupper v. St. Francois County, et al.*
Page 7

40. Upon information and belief, as part of the St. Francois County Sheriff's Department policy (whether written, unwritten or simply custom and practice), acting pursuant to the Sheriff's Department's policy, the jail does not provide medical personnel to evaluate confinees for medical issues on evenings and weekends.

41. Upon information and belief, as part of the St. Francois County Sheriff's Department policy (whether written, unwritten or simply custom and practice), no trained medical personnel are present on evenings and weekends at the St. Francois County Jail to administer medications to inmates on evenings and weekends.

42. Prescription medications are not provided to inmates of the county jail during the evenings or weekends because the jail does not provide qualified personnel to administer said medications. By not having medical personnel present on evenings and weekends, and by not calling 911 for emergencies, the County saves money.

43. Smith, the St. Francois County Jail and Sheriff's Department had prior knowledge of Decedent's medical needs for anti-seizure medication.

44. The St. Francois County Sheriff Department had prior knowledge of Decedent's medical needs due to the staff's interaction with Tabitha Tupper due to her prior confinements at the jail.

45. Heather Katherine Smith had prior knowledge of Decedent Tabitha Tupper's medical needs due to her prior confinement at the jail.

46. The failure to provide for Tabitha's medical needs during her confinement at the jail constitute cruel and unusual punishment.

**Complaint**
*Tupper v. St. Francois County, et al.*
Page 8

47. Tabitha Tupper had the right to be free from cruel and unusual punishment. The right of inmates to be free from cruel and unusual punishment has been clearly established since *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979).

48. For several days, other inmates and detainees called out to the guards and pleaded with them to assist Decedent Tabitha Tupper, but Defendants 1-6 callously ignored the requests for help from those who were calling the guards on Tabitha's behalf.

49. At least once during that weekend, witnesses state that they observed Tabitha Tupper's behavior that included convulsing and speaking gibberish and lying in her own waste, which they interpreted to mean that she was suffering great physical distress and in need of immediate medical attention.

50. If these jailed witnesses had observed the change in Tabitha's behavior, then Does 1-6 could have also observed and interpreted the behavior to mean that Tabitha needed immediate medical treatment.

51. Tabitha, despite her substantially altered state from when she first entered the jail, received no anti-seizure medication or medical care. No one called 911. The only thing that happened was that Tabitha was dragged to "the hole" and left there until she died.

52. Upon information and belief, the cell where Tabitha Tupper was restrained throughout her two-week confinement was equipped with video monitoring equipment that was operational and accessible to Does 1-6.

**Complaint**
*Tupper v. St. Francois County, et al.*
Page 9

53. Given the above information known to Does 1-6, they had more than enough information, even as lay persons, to easily recognize the necessity of immediate medical evaluation and intervention on behalf of Tabitha Tupper but they deliberately and intentionally disregarded her medical needs.

54. Had Tabitha Tupper been taken to the hospital in response to any of the seizures, she would still be alive today.

55. Had Tabitha Tupper been examined by Nurse Smith during any of the two weeks she was confined at the jail, Tabitha could have been tested and treated with anti-seizure medication in a timely manner, or even tested and treated for drug intoxication if she was in fact under the influence of drugs.

56. Had the County provided proper training and resources to its staff, Tabitha Tupper would still be alive.

### COUNT I
### VIOLATIONS OF 42 U.S.C. § 1983
### (AGAINST ALL DEFENDANTS)

57. Plaintiff realleges the allegations in paragraphs 1-56 as if set forth fully herein.

58. Defendants Sheriff, County, Smith, Nurse Smith, Does 1-6 had a duty under the Eighth and Fourteenth Amendments to provide Tabitha Tupper with appropriate medical evaluations and necessary medical treatment and care.

59. Defendants knew that Tabitha Tupper required medications to prevent seizures.

**Complaint**
*Tupper v. St. Francois County, et al.*
Page 10

60. Defendants failed and refused to provide adequate medical evaluation and treatment, causing Decedent to suffer a seizure during the period she was confined in the jail and unable to leave or otherwise obtain medical assistance for herself. This seizure could have been prevented by providing Tabitha with her anti-seizure medication.

61. Defendants failed and refused to provide needed medical evaluation, intervention and treatment to Decedent even though they had sufficient information that Decedent had suffered two or three seizures during her confinement and her behavior had drastically altered from the first week of her confinement.

62. Defendants failed to provide any medical evaluation, medical supervision, intervention or treatment to Tabitha during her two-weeks of confinement.

63. Defendants failed and refused to provide Tabitha Tupper with access to medical care and instead, intentionally and maliciously kept Decedent locked down in "the hole" and thus rendered her completely helpless until her death.

64. Defendants knew that Tabitha Tupper was in danger of serious harm from seizures and her other chronic medical conditions.

65. Defendants knew that Tabitha Tupper was in danger of serious, immediate, and proximate harm from seizures if she was not provided anti-seizure medication.

66. Defendants acted with deliberate indifference to Tabitha's medical needs, exposing her to a sufficiently substantial risk of serious damage to her health, which ultimately culminated in her untimely and preventable death.

**Complaint**
*Tupper v. St. Francois County, et al.*
Page 11

67. Be refusing to provide Decedent Tabitha Tupper with proper medical care, Defendants deprived Tabitha Tupper of her right to medical care and treatment, in violation of the Eighth and Fourteenth Amendments, and exhibited a callous and deliberate indifference to, and a reckless and conscious disregard for, her serious medical needs, including but not limited to denying her access to intensive and structured medical evaluation, care, treatment, and observation necessary to address serious medical needs and prevent suffering and death.

68. Defendants exhibited a reckless and callous, conscious disregard and deliberate indifference to the obvious and serious threat to the mental health and physical well-being of Decedent Tabitha Tupper.

69. Defendants Sheriff, County, Smith, Nurse Smith, and John Does 1-6 knew that the Decedent had a history of drug addiction and seizures and there was an obvious and substantial risk that Decedent, if left untreated, would suffer serious injury or death, that such injury or death was reasonably foreseeable, and that the threat of injury or death was imminent and immediate.

70. In light of the aforementioned averments, Tabitha Tupper suffered from both an objectively and a subjectively substantial risk of serious harm while under the care and custody of Defendants Sheriff, County, Smith, Nurse Smith, and John Does 1-6, and said Defendants reacted to this risk in an objectively and subjectively unreasonable manner.

71. As the result of the actions of the Defendants' named in Count I herein and their disregard of and indifference to Decedent Tabitha Tupper's constitutionally

**Complaint**
*Tupper v. St. Francois County, et al.*
Page 12

protected due process rights to be provided with proper medical evaluation and care and to be safe and free from harm, the Decedent's medical needs and physical needs were ignored.

72. The death of Tabitha Tupper is the direct and proximate result of the deliberate indifference to her medical needs and the resulting denial of care of Defendants named in this Complaint.

73. Taken in total, Defendants' behavior as described in this and every Count of this Complaint shock the conscience.

74. As a result of the actions and failures to act of the Defendants, Plaintiff is entitled to damages for the pain, suffering and death of Tabitha Tupper and the loss thus occasioned, including but not limited to the pecuniary losses suffered by the death of Decedent, funeral expenses, and the reasonable value of services, consortium, companionship,, instruction, guidance, counsel, training, and support; further including the loss of services, attention, advice, protection, earnings, and other value of benefits which would have been provided by Tabitha Tupper during the remainder of her expected lifetime.

75. The actions and failures to act of all named Defendants were willful, wanton, malicious, or with complete reckless indifference to, or conscious disregard for, the rights of Tabitha Tupper, III.

76. The actions of all named Defendants were taken in the face of a perceived risk that the actions would violate federal and/or state laws and the Eighth Amendment of the U.S. Constitution as applied to the political subdivisions of the State of Missouri

through the Fourteenth Amendment of the U.S. Constitution. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)

77. The acts of all named Defendants were willfully wrong or done with malice, corruption, or bad faith.

78. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover his attorney fees and costs incurred in pursuing this claim.

## COUNT II
## VIOLATION OF 42 U.S. 1983: FAILURE TO TRAIN
## (AGAINST ST. FRANCOIS COUNTY}

79. Plaintiff realleges the allegations in paragraphs 1-78 as if set forth in full herein.

80. Defendants County, Sheriff, and Smith all had a duty to train their employees to recognize when an inmate – one with a disability, no less - needs medical and/or psychological evaluation. Defendants County, Sheriff, and Smith all had a duty to train its employees on how to obtain immediate medical evaluations for inmates.

81. On information and belief, the Defendants County, Sheriff, Smith, and White have intentionally failed and refused to provide sufficient medical staff during evenings and weekends to see to the medical needs of inmates.

82. Upon information and belief, Defendants County, Sheriff, and Smith failed to provide their staff – including Does 1-6 with the appropriate training to recognize when medical evaluation and/or intervention is necessary.

**Complaint**
*Tupper v. St. Francois County, et al.*
Page 14

83. On information and belief, the Sheriff's Department, the County and the Jail have a policy of not staffing appropriate medical personnel on evenings and weekends to save money.

84. By failing to train the evening and weekend staff on recognizing when an inmate needs medical treatment, and by failing to provide staff that have those skills, Defendants County, Sheriff, and Smith violated 42 U.S.C. 1983 and Tabitha Tupper's Constitutional rights.

85. Plaintiff is entitled to an award of compensatory damages against Defendants County.

86. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover his attorney fees and costs incurred in pursuing this claim.

## COUNT III
## WRONGFUL DEATH
## (AGAINST ALL DEFENDANTS)

87. Plaintiff realleges the allegations in paragraphs 1-86 as if fully set forth herein.

88. All Defendants – Defendants St. Francois County, St. Francois County Sheriff, Dennis W. Smith, John Does 1-6, and Heather Katherine Smith – owed a non-delegable duty to Decedent Tabitha Tupper to use reasonable care to ensure her safety.

89. Defendants as named herein failed to perform their duty of using reasonable care to ensure the Decedent's safety.

90. All named Defendants failed to monitor and treat Decedent's medical condition and needs, including, but not limited to:

**Complaint**
*Tupper v. St. Francois County, et al.*
Page 15

      a.      Failing to provide Decedent, who was known by them to have a history of seizures and illegal use of controlled substances, with a medical examination during the two weeks of Decedent's confinement in November, 2017.

      b.      Failing to provide the Decedent, who was known to suffer from debilitating seizures, with prescription anti-seizure medication.

      c.      Failing to provide Decedent, who had a history of illegal use of controlled substances, with regular monitoring despite affirmatively stating their belief of Tabitha while she was in their care and custody that Tabitha Tupper "must have taken drugs."

      d.      Failing to provide Decedent with immediate crisis stabilization care despite having knowledge of Decedent's history of seizures, drug usage, and belief that Decedent had recently ingested drugs.

      e.      Failing to address Decedent's lack of unrestricted movement, exercise, food, water, access to a toilet, companionship, and physical well-being.

      f.      In the absence of addressing her needs, failing to at least place Decedent under adequate supervision during Decedent's obviously and substantially altered physical conditional or taking preventive measures necessary to prevent her death, despite knowledge of the risk posed by Decedent's medical history, history of illegal drug

**Complaint**
*Tupper v. St. Francois County, et al.*
Page 16

use, and the deputy's affirmative statement that Decedent had recently ingested drugs.

91. As a direct and proximate result of the failures by the named Defendants to perform their duty of reasonable care to ensure the safety of Tabitha Tupper, Tabitha suffered cruel and unusual punishment for hours on end as the result of seizures before dying alone in "the hole."

92. The named Defendants were aware that inmates, including Decedent, were not receiving minimally adequate health care at St. Francois County Jail.

93. It was reasonably foreseeable that harm would befall Decedent, either directly or indirectly, as the result of the actions and omissions of the named Defendants.

WHEREFORE, plaintiff respectfully requests that this Court enter judgment in his favor against all defendants, award him compensatory or damages in an amount to be proven at trial, award him punitive damages, attorney's fees, costs of suit, expert fees, and any other and further relief as the Court deems just and proper.

Respectfully submitted,

**Manley, Karraker & Karraker, P.C.**

/s/ Vonne L. Karraker
Vonne L. Karraker, MBE #56335
110 S. Jefferson Street
P. O. Box 454
Farmington, MO 63640
Telephone:   573-756-6446
Facsimile:   573-756-5151
vonne@semoelderlaw.com

Attorney for Plaintiff